# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PENGUIN RANDOM HOUSE, LLC, et al.

    Plaintiffs,

        v.

BEN GIBSON, in his official capacity as Chair of the Florida State Board of Education, et al.,

    Defendants.

Case No. 6:24-cv-01573

## STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

As explained in the State Defendants' motion to dismiss, Plaintiffs lack standing to sue the State Defendants. They also lack a cause of action for Count II, which is in any event barred by the Eleventh Amendment. Finally, Plaintiffs' First Amendment claims fail because the selection and removal of public-school-library materials is government speech.

**I.    PLAINTIFFS LACK STANDING TO SUE THE STATE DEFENDANTS.**

Plaintiffs contend that they have standing to sue the State Defendants because "it is the State Defendants' objection form that imposes the challenged provisions on school districts." DE94 at 17. That is wrong. Florida Statutes Section 1006.28(2) imposes "duties" on district school boards directly, and the district school boards have an "independent obligation to follow the law." *City of S. Miami v. Governor*, 65 F.4th 631, 643 (11th Cir. 2023).

1

Plaintiffs argue that *City of South Miami* is different because the State Defendants here "play a significant role in the removal of books under the challenged provisions." DE94 at 19 n.12. But the State Defendants do not have the kind of enforcement role that *City of South Miami* requires. They cannot enforce the statute directly against private parties, but only against the local school districts who themselves are charged with enforcing the statute at the ground-level. DE85-1 at 8–9. That is exactly the kind of supervisory authority the Governor had in *City of South Miami*, and the Eleventh Circuit found it insufficient to establish traceability or redressability. The Court should do the same here.[1]

## II. COUNT II FAILS FOR ADDITIONAL THRESHOLD REASONS.

Count II fails because Plaintiffs lack a cause of action to bring it. It is irrelevant that "Count II expressly seeks a declaratory judgment," DE94 at 19 n.13, because a "declaratory judgment is a form of relief, not a cause of action." *Datum Software, Inc. v. Citizant, Inc.*, No. 23-12538, 2024 WL 3719111, at *2 n.3 (11th Cir. Aug. 8, 2024); *Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[T]he question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."); DE85-1 at 10–11.

---

[1] *Loggerhead Turtle v. County Council*, 148 F.3d 1231, 1247 (11th Cir. 1998) is inapposite. DE94 at 18 n.11. In *Loggerhead*, the court specifically stated that "[t]he causal link may become 'too attenuated' if the injury is 'the result of the independent action of some third party not before the court.'" 148 F.3d at 1247. And though an injury may be "fairly traced to the actions" of multiple parties, *id.*, when relief against one of those parties will not redress the injury, a plaintiff lacks standing. *City of S. Miami*, 65 F.4th at 645. In *Loggerhead*, Volusia County "indisputably . . . possess[ed] exclusive local regulatory and enforcement control." 148 F.3d at 1247.

2

Count II is also barred by the Eleventh Amendment. Plaintiffs do "not claim that the State Defendants have violated Florida state law," but they do request that the Court declare that Section 1006.28(2)(a)2.b.(I) means something different than what the State has interpreted it to mean. DE94 at 19–20. And a federal court "cannot [require] Florida to follow the [ ] court's interpretation of Florida's own [statute]." *Hand v. Scott*, 888 F.3d 1206, 1213–14 (11th Cir. 2018); DE85-1 at 11–12.

### III. PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM.

**A.** As an initial matter, the State Defendants do not "question the existence of a First Amendment right to receive information" generally, DE94 at 8, but dispute only that students have a First Amendment right to dictate the contents of government-operated school libraries. Plaintiffs say they do not seek to "force their books onto school-library shelves" but "to prevent the State Defendants from requiring that . . . school districts remove" them. DE94 at 9 n.6. But there is no coherent "theory" for distinguishing "a school board's decision to remove a book from the library" from its "decision not to purchase that identical book." *Board of Educ. v. Pico*, 457 U.S. 853, 895 (1982) (Powell, J., dissenting). "The failure of a library to acquire a book denies access to its contents just as effectively as does the removal of the book from the library's shelf." *Id.* at 916 (Rehnquist, J., dissenting, joined by Burger, C.J., and Powell, J.).

Nor do the State Defendants "ignore [a] longstanding, substantial body of authority holding that the First Amendment applies in public and school libraries."

3

DE94 at 6–7. Other than *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660, 667–68 (8th Cir. 2024), which contains only dicta in the context of addressing a standing issue, Plaintiffs cite cases that either predate the Supreme Court's recognition of the government-speech doctrine in *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550 (2005)[2] or rely on *Board of Education v. Pico*, 457 U.S. 853 (1982) (plurality opinion), a "badly fractured decision" that "is of no precedential value as to the application of the First Amendment to these issues" in the Eleventh Circuit. *ACLU of Fla. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1199–1200 (11th Cir. 2009).[3] Plaintiffs' cases do not seriously grapple with the Supreme Court's explanation in *United States v. American Library Association*, 539 U.S. 194, 205 (2003) (plurality opinion) (*ALA*), that public-library staff enjoy broad discretion in making collection decisions, much less the Court's recent guidance that the First Amendment right to information does not grant "the right to sue over *someone else's* censorship"—here, the alleged censorship of authors—merely

---

[2] *See Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582-83 (6th Cir. 1976); *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 188-190 (5th Cir. 1995); *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 686-89 (D. Me. 1982); *Salvail v. Nashua Bd. of Ed.*, 469 F. Supp. 1269, 1272-73 (D.N.H. 1979); *Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 710-11 (D. Mass. 1978). These cases also predate the Supreme Court's guidance in *ALA*, 539 U.S. at 205 (plurality opinion), explaining that public-library staff enjoy broad discretion in making collection decisions.

[3] *Campbell*, 64 F.3d at 188-190; *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024); Order on Motion for Preliminary Injunction at 14, *Adams v. Matanuska-Susitna Borough Sch. Dist.*, No. 3:23-cv-00265-SLG (D. Alaska Aug. 6, 2024); *Fayetteville Public Library v. Crawford County*, 684 F. Supp. 3d 879, 909-910 (W.D. Ark. 2023); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004 (W.D. Ark. 2003); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547-48 (N.D. Tex. 2000); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 874-76 (D. Kan. 1995).

because the plaintiff "claim[s] an interest in that person's speech." *Murthy v. Missouri*, 603 U.S. 43, 75 (2024).

**B.** On the government-speech factors, Plaintiffs contend that "school librarians—not the State—have historically decided which library books to make available to . . . students." DE94 at 11. But public-school librarians are state employees, Fla. Stat. § 1006.28(2)(d), 1., and make decisions based on criteria set by the state legislature—*e.g.*, that the materials selected are of the requisite and appropriate quality to support the academic needs of students. Fla. Stat. § 1006.28(2)(d)2.c.; *ALA*, 539 U.S. at 204. There would be no constitutional problem if the Legislature were to adopt a different way of making such decisions, but that is beside the point. There can be no question that the State—through its employees—has historically decided what books go on public-school-library shelves, and it continues to do so.

On the endorsement and control factors, Plaintiffs assert that the government does not endorse or control the "diverse and contradictory" individual "messages conveyed in school library books" and that it does not control those messages because it does not control the contents of the books. DE94 at 11–12. But the endorsement factor asks "whether the kind of speech at issue"—here the curation of public-school-library collections—"is often closely identified in the public mind with the government." *Gundy v. City of Jacksonville*, 50 F.4th 60, 78 (11th Cir. 2022). The curation of public-school-library materials is closely identified with the government because the county school districts "organize[]" the library, "provide[] the venue," and "select[]" the books. *Id.* at 78–79. Likewise, the government

5

"maintains direct control over the message[] conveyed through the speech in question," *id.* at 79, because public-school-library staff exercises final approval authority over book selection. Fla Stat. § 1006.28(2)(d)1. The government need not have "editorial rights over the exact content of the" books; "selecting one [book] over another exhibits control." *Gundy*, 50 F.4th at 80. In arguing otherwise, Plaintiffs conflate the message of the individual authors with the State's message that a particular body of works, selected from the much broader universe of materials that exist, is worthy of placement in the State's libraries, according to the State's standards.

**C.** Finally, Plaintiffs fault Defendants for "ask[ing] the Court to adopt their preferred substantive legal standard and to evaluate Plaintiffs' claims on the merits" when "[t]hose arguments have no bearing on a motion to dismiss." DE94 at 15–16. While Plaintiffs' objection is unclear, if they mean that the Court cannot determine what legal framework to apply at the motion-to-dismiss stage to analyze whether Plaintiffs' allegations are legally sufficient, that is wrong. "[A] court can fully resolve any purely legal question on a motion to dismiss"—including whether the selection and removal of public-school-library books is government speech or whether *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988) dictates the First Amendment's application to these issues—so "there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *see also Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) ("[A] court may dismiss a

6

complaint pursuant to Rule 12(b)(6) on a dispositive issue of law."). For the reasons explained in the State Defendants' motion to dismiss, Plaintiffs have failed to state a First Amendment claim, and the motion should be granted. *See Dean v. Warren*, 12 F.4th 1248, 1264, 1266 (11th Cir. 2021) (affirming grant of a motion to dismiss over the argument "that the issue of government speech should not be resolved at the motion-to-dismiss stage").

Dated: January 10, 2025

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
bridget.ohickey@myfloridalegal.com

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*
HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*
DANIEL W. BELL (FBN 1008587)
  *Chief Deputy Solicitor General*
*/s/ Bridget K. O'Hickey*
BRIDGET K. O'HICKEY (FBN 1048521)
  *Deputy Solicitor General*

*Counsel for the State Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Bridget K. O'Hickey*
*Deputy Solicitor General*

7