UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PENGUIN RANDOM HOUSE LLC, HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS LLC, MACMILLAN PUBLISHING GROUP, LLC, SIMON & SCHUSTER, LLC, SOURCEBOOKS LLC, THE AUTHORS GUILD, JULIA ALVAREZ, JOHN GREEN, LAURIE HALSE ANDERSON, JODI PICOULT, ANGIE THOMAS, HEIDI KELLOGG and JUDITH ANNE HAYES,**

          **Plaintiffs,**

**v.**                         **Case No.  6:24-cv-1573-CEM-RMN**

**BEN GIBSON, RYAN PETTY, ESTHER BYRD, GRAZIE P CHRISTIE, KELLY GARCIA, MARYLYNN MAGAR, TERESA JACOBS, ANGIE GALLO, MARIA SALAMANCA, ALICIA FARRANT, PAM GOULD, VICKI-ELAINE FELDER, KAREN CASTOR DENTEL, MELISSA BYRD, JAMIE HAYNES, ANITA BURNETTE, RUBEN COLON, CARL PERSIS, and JESSIE THOMPSON,**

          **Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court on Defendants Ben Gibson, Ryan Petty, Esther Byrd, Grazie P Christie, Kelly Garcia, and Marylynn Magar's (collectively, "State Defendants") Motion to Dismiss ("Motion," Doc. 85-1), to which Plaintiffs filed a Response (Doc. 94), and State Defendants filed a Reply (Doc. 100). For the reasons set forth below, the Motion will be denied.

## I.    BACKGROUND

In 2023, the State of Florida passed HB 1069. (Compl., Doc. 1, at 22). The bill amends section 1006.28 of the Florida Statutes, which permits the removal of school library books if parents object to their content. (*See* HB 1069, Doc. 1-1, at 12–21). Under the amended statute, the State Board of Education must create an objection form to facilitate the objection process. (*Id.* at 13). Parents may object to material that "[i]s pornographic or prohibited under s. 847.012" or "[d]epicts or describes sexual conduct as defined in s. 847.001(19)." (*Id.* at 13–14); Fla. Stat § 1006.28(2)(a)2.b.(I), (II). Plaintiffs challenge the definitions State Defendants have used in construing the statute when promulgating the template objection form. (Doc. 1 at 4–6). "The part of the form that lists the bases for objections 'must not be modified by school districts.'" (*Id.* at 18 (quoting Fla. Admin. Code r. 6A-7.0714)). Among others, the template form State Defendants created lists the following bases for an objection: "[t]he material is pornographic"; "[t]he material is prohibited under

Section 847.012, F.S."; and "[t]he material depicts or describes sexual conduct as defined in Section 847.001(19), F.S." (Specific Material Objection Template, Doc. 1-2, at 3). Plaintiffs bring three counts seeking declaratory relief against State Defendants. In Count I, Plaintiffs challenge the prohibition of material that "describes sexual conduct" as an impermissible overbroad content-based restriction in violation of the First Amendment. (Doc. 1 at 60–66). In Count II, Plaintiffs seek a declaration that the term "pornographic" is synonymous with "harmful to minors." (*Id.* at 66–69). In Count III, which is pled in the alternative to Count II, Plaintiffs challenge the prohibition of material that is "pornographic" as an impermissible overbroad content-based restriction in violation of the First Amendment. (*Id.* at 69–74). State Defendants now move to dismiss Counts I through III pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    LEGAL STANDARD

State Defendants begin by arguing there is no justiciable controversy. *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[N]o justiciable controversy is presented . . . when the parties are asking for any advisory opinion . . . and when there is no standing to maintain the action."). A challenge to Article III standing implicates subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). Likewise, subject matter jurisdiction is implicated if the Court is asked to issue an advisory opinion. *Flast*, 392 U.S. at 96 ("[T]he implicit policies embodied in Article III, and

not history alone, impose the rule against advisory opinions on federal courts.").
Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss
the claims against it for "lack of subject-matter jurisdiction."

"Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks'
and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d
1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529
(11th Cir. 1990)). Here, Defendants make only a facial attack. "Facial attacks
challenge subject matter jurisdiction based on the allegations in the complaint, and
the district court takes the allegations as true in deciding whether to grant the
motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

The remainder of the Motion argues that Plaintiffs have failed to state a claim,
which is analyzed under Federal Rule of Civil Procedure 12(b)(6). "A pleading that
states a claim for relief must contain . . . a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to
Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint
for "failure to state a claim upon which relief can be granted." In determining
whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the
complaint as true and construes them in a light most favorable to the non-moving
party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).
Nonetheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III.   ANALYSIS

#### A.   Standing

The jurisdiction of federal courts is limited to "Cases" or "Controversies." U.S. Const. art. III. "A proper case or controversy exists only when at least one plaintiff establishes that she has standing to sue—*i.e.*, that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (internal citation and quotation marks omitted) (cleaned up). "The latter two requirements—traceability and redressability—often

travel together." *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1200 (11th Cir. 2021).

State Defendants first argue that Plaintiffs' alleged injury is not fairly traceable to and thus not redressable by a decision against them because they only have general supervisory authority over the true actors removing books—the local school boards. (Doc. 85-1 at 6–9). "When traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied." *City of S. Miami v. Gov. of Fla.*, 65 F.4th 631, 640 (11th Cir. 2023). And "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). In rejoinder, Plaintiffs point to State Defendants' role in creating the objection form as required by the challenged state statute and that State Defendants' interpretation of the statute is at the root of Plaintiff's alleged injury here. (Doc. 94 at 17–18).

State Defendants' reliance on *City of South Miami* is misplaced. That case involved the plaintiffs "challeng[ing] a state law that require[d] local law enforcement to cooperate with federal immigration officials." 65 F.4th at 634. The Eleventh Circuit held that the plaintiffs' "alleged injury [wa]s neither traceable to the governor or attorney general nor redressable by a judgment against them because they do not enforce the challenged provisions" because the law only "operate[d] on

officials at the local level." *Id.* at 634, 641. While the law in *City of South Miami* only allowed "the governor and attorney general to sue state and local officers to enjoin violations of the statute," *id.* at 635, the statute here both operates on State Defendants and affords them far greater authority to implement and enforce the law.

Who caused the injury? While it may be local officials that physically remove the books, it is State Defendants' interpretation of the statute—contained in the objection form—that Plaintiffs challenge in this action. The form "requires the objector to '[i]dentify the basis for your objection' under Section 1006.28 and lists multiple separate bases for objections for the objector to select, including that the book (a) is 'pornographic,' (b) is 'prohibited under s. 847.012, F.S.' as harmful to minors, or (c) 'depicts or describes sexual conduct as defined in s. 847.001(19), F.S.'" (Doc. 1 at 18 (alteration in original)). Plaintiffs seek two forms of declaratory relief against State Defendants. First, that "describes sexual conduct" is an overbroad content-based restriction under the First Amendment. (*Id.* at 59). Second, that "pornographic" is synonymous with "harmful to minors," (*id.* at 65), or in the alternative, that "pornographic" is an overbroad content-based restriction under the First Amendment, (*id.* at 68). Because the objection form is "prescribed by State Board of Education rule," pursuant to section 1006.28(2)(a)2. of the Florida Statutes, State Defendants are at the root of Plaintiffs' alleged injury.

How can it be remedied? Local school boards have no power to change the objection form of their own accord because the form "must not be modified" apart from specific enumerated allowances to assist in user-friendliness. Fla. Admin. Code r. 6A-7.0714(3) (c), (d); (*see also* Doc. 1 at 18). Thus, the remedy sought by Plaintiffs amounts to a demand that the language in the objection form be altered. And that cannot be done unless State Defendants do so.

Furthermore, the "State Board of Education must approve or reject the recommended decision" of an appointed special magistrate if a parent disagreed with a school board's decision on an objection. Fla. Stat. § 1006.28(2)(a)6. And unlike *City of South Miami*, the statute also imposes an additional duty on State Defendants because it notes "[t]he State Board of Education shall adopt rules, including forms, necessary to implement this subparagraph." *Id.* Therefore, Plaintiffs' alleged injury is both fairly traceable to the challenged action and redressable by a favorable ruling.

State Defendants then argue that any possibility of their enforcing the challenged provisions is too removed in the chain of contingencies for Plaintiffs to allege an injury. (Doc. 94 at 9–10). However, that argument overlooks State Defendants' role in promulgating the challenged language in the objection form and adopting rules to implement the statute at issue, which the Court has addressed above. Furthermore, Plaintiffs allege several books have already been removed pursuant to that statute. (*See, e.g.*, Doc. 1 at 3 ("Maya Angelou's *I Know Why the*

*Caged Bird Sings*, Ralph Ellison's *Invisible Man*, Ernest Hemingway's *For Whom the Bell Tolls*, Zora Neale Hurston's *Their Eyes Were Watching God*, Aldous Huxley's *Brave New World*, Toni Morrison's *The Bluest Eye*, Leo Tolstoy's *Anna Karenina*, Richard Wright's *Native Son*, Kurt Vonnegut's *Slaughter-House Five*, and Alice Walker's *The Color Purple* are some of the many books that the State of Florida has required be removed from school libraries.")).

Even if Plaintiffs sought pre-enforcement review, "a [First Amendment] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U. S. 289, 298 (1979)). Here, author and publisher Plaintiffs seek to provide students access to books in a public school library that may be removed under the challenged statute, and parent Plaintiffs want their children to have access to those books. (Doc. 1 at 13–17). State Defendants implement the challenged statute and have ultimate review authority over a school board's decision. (*See id.* at 28).

Lastly, State Defendants make an argument that "the First Amendment right to information does not grant 'the right to sue over someone else's censorship'— here, the alleged censorship of authors—merely because the plaintiff 'claim[s] an

interest in that person's speech.'" (Doc. 100 at 5 (quoting *Murthy*, 603 U.S. at 75)).
This is wrong. The quoted material from *Murthy v. Missouri* addressed plaintiffs'
standing argument under their argument that they have a "right to listen" to other
social-media users. *Id.* at 74–75.

Censorship of social-media posts is readily distinguishable from that of
published authors. *See Minarcini v. Strongsville City School Dist.*, 541 F.2d 577,
583 (6th Cir. 1976) (finding "right of students to receive information which they and
their teachers desire them to have" and standing for student plaintiffs to challenge
the removal of school library books). The Supreme Court has "identified a
cognizable injury . . . where the listener has a concrete, specific connection to the
speaker." *Murthy*, 603 U.S. at 75. Just as "prescription-drug consumers had an
interest in challenging the prohibition on advertising the price of those drugs," *id.*
(citing *Virginia Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748, 756–57 (1976)), parents have an interest in challenging the prohibition
of school library books they and their children desire to read. Thus, Plaintiffs have
standing.

B.    **Advisory Opinion**

State Defendants argue that Plaintiffs ask the Court for an advisory opinion in
Count II because the Declaratory Judgment Act does not provide a standalone cause
of action. (Doc. 85-1 at 11). "As is well known, the federal courts established

pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947) (footnotes omitted). Thus, the ban on advisory opinions stems from Article III's case or controversy requirement.

Likewise, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201. That is, all that must exist for a court to render declaratory relief is what must exist in every case—an Article III case or controversy. Here, there is. *See supra* Section III.A.

In Count II, Plaintiffs seek a declaration that "the term 'pornographic' as used in section 1006.28 is synonymous with the term 'harmful to minors.'" (Doc. 1 at 69). On its face, Plaintiffs request looks rather like the relief sought in *Mitchell*. There, the plaintiffs sought a declaration that a sentence in the Hatch Act preventing government employees from acting as poll watchers was unconstitutional, and the Supreme Court found no justiciable controversy. 330 U.S. at 86–91. The Court distinguished that particular circumstance from others, characterizing the threat of

harm in *Mitchell* as a "general threat by officials to enforce those laws which they are charged to administer" rather than a "direct threat of punishment against a named organization for a completed act that made . . . [other] cases justiciable." *Id.* at 88.

Here, the Court is faced—at the least—with a situation where Plaintiffs are experiencing a direct threat of enforcement against them. Plaintiffs allege books have been and are being removed from public school libraries across the state. (*See, e.g.*, Doc.1 at 3, 13–17). The objection form containing the interpretation of the statute Plaintiffs challenge in Count II is promulgated by State Defendants and cannot be altered by the local school boards. Fla. Admin. Code r. 6A-7.0714(3) (c), (d); (*see also* Doc. 1 at 18). Therefore, the declaratory relief sought would resolve the case or controversy before the Court.

Furthermore, under Florida law, "[g]enerally speaking, individuals may challenge the validity of a statute in a declaratory judgment action." *Wilson v. Cnty. of Orange*, 881 So. 2d 625, 631 (5th DCA 2004) (citing *Martinez v. Scanlan*, 582 So. 2d 1167 (Fla. 1991)); *see also* Fla. Stat. § 86.021 ("Any person . . . whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority . . . may have determined any question of construction or validity arising under such statute[ or] regulation . . . and obtain a declaration of rights, status, or other equitable or legal relations thereunder.").

State Defendants proceed to argue that Plaintiffs' request also runs afoul of the Eleventh Amendment as an intrusion on state sovereignty. (Doc. 85-1 at 11–13). Relying on *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), State Defendants contend that if the Court grants Plaintiffs the redress they seek, it will "instruct[ ] state officials on how to conform their conduct to state law," *id.* at 106. That is not so. If the Court finds for Plaintiffs on Count II and issues the sought declaration, it will only find State Defendants' interpretation of section 1006.28 is in violation of the United States Constitution. (*See* Doc. 1 at 68). That would not violate the Eleventh Amendment because "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102–03 (explaining the Supreme Court's holding in *Ex parte Young*, 209 U.S. 123 (1908), and subsequent history).

Any declaration issued would ultimately instruct State Defendants on how to conform their conduct to the restrictions imposed by the First Amendment, incorporated against the states by the Fourteenth Amendment, not state law and not the state constitution. Neither of which may violate the United States Constitution. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding."). Therefore, Plaintiffs request neither an advisory opinion nor relief that violates the Eleventh Amendment. Count II survives, for now.

### C.    Shotgun Pleading

Beyond Federal Rule of Civil Procedure 8(a)(2)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different

count each cause of action or claim for relief." *Id*. at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323.

Initially, State Defendants attempt to assert the complaint is some version of the most common type of shotgun pleading, (Doc. 85-1 at 2–3), relying on *Clifford v. Federman*, 855 F. App'x 525, 529 (11th Cir. 2021). In *Clifford*, "the majority of the 52 counts incorporated almost the entirety of the fact section of the complaint, consisting of 249 paragraphs and 104 pages." *Id.* Here, each of the 7 counts incorporates 163 paragraphs over 58 pages, and the factual allegations span 106 paragraphs. However, each count does not "carry all that came before and the last count [is not] a combination of the entire complaint." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1321). Despite State Defendants' arguments, their thorough and detailed Motion addressing the claims brought by Plaintiffs belies any argument that the complaint is a shotgun pleading. *See Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

Next, State Defendants aver the complaint commits the second sin. They provide only a single example of this purported violation, noting Plaintiffs did not identify which school districts allegedly removed certain books and how those removals were relevant to the claims against State Defendants. (Doc. 85-1 at 4). However, Plaintiffs have explained that their claims against State Defendants stem from "the supervision and authority of the State Defendants" in the book removal process. (Doc. 1 at 25). The Complaint is also not "rife with immaterial factual allegations." *Barmapov*, 986 F.3d at 1325 (explaining allegations about certain defendants alleged criminal history were "irrelevant" and noting other "inconsequential details"). And neither is it a "rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these [Plaintiffs] are claiming." *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997).[1]

Finally, State Defendants argue Count I commits the third sin because within the First Amendment overbreadth cause of action is an allegation regarding interference with the students' First Amendment right to receive information. (Doc. 85-1 at 5). However, Count I is brought by both the authors and publishers as well

---

[1] Another reason to reject this argument is the other Defendants have been able to parse the complaint, filing answers, (Doc. Nos. 81 and 82), and amended answers, (Doc. Nos. 87 and 88). *Cf. Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "[m]any of the factual allegations appear to relate to only one or two counts, or to none of the counts at all" and "a reader of the complaint must speculate as to which factual allegations pertain to which count").

as parents, on behalf of their student children. As noted above, the Supreme Court
has "permitted First Amendment claims by those who did not themselves intend to
engage in speech, but instead wanted to challenge a restriction on speech they
desired to hear." *Renne v. Geary*, 501 U.S. 312, 319 (1991); *see also Kleindienst v.
Mandel*, 408 U.S. 753, 762–63 (1972) ("This freedom (of speech and
press) . . . necessarily protects the right to receive . . . ." (alternation in original)).
Furthermore, "Federal Rule of Civil Procedure 10(b) requires parties to limit claims
'as far as practicable to a single set of circumstances,' and to state in a separate count
or defense 'each claim founded on a separate transaction or occurrence . . . .' The
separation of claims, however, is required by Rule 10(b) 'only when necessary to
facilitate a clear presentation.'" *Amegy Bank Nat'l Ass'n v. Deutsche Bank Corp.*,
917 F. Supp. 2d 1228, 1232–33 (M.D. Fla. 2013) (quoting Wright & Miller, 5A Fed.
Prac. & Proc. Civ. § 1324 (3d ed.)). "The [overbreadth] [ ] claim is inextricably tied
to the [right to receive information] claim and the two claims relate to a single set of
circumstances." *Id.* Therefore, the Complaint will not be dismissed as a shotgun
pleading.

### D.    Failure to State a Claim

"There is perhaps no more important place for guarding free speech principles
than in our Nation's schools." *ACLU of Fla. v. Mia.-Dade Cnty. Sch. Bd.*, 557 F.3d
1177, 1235 (11th Cir. 2009). State Defendants make three arguments that HB 1069

does not violate the First Amendment. First, selection of public library books is
government speech. (Doc. 85-1 at 13–21). Second, the government has no obligation
to provide school libraries, which they characterize as a gratuitous benefit. (*Id.* at
21–23). Third, even if the First Amendment applied here, Plaintiffs would only be
entitled to rational basis review and would fail under that standard. (*Id.* at 23–25).
At this stage, each argument fails.

### 1.    *Government Speech*

"If private speech could be passed off as government speech by simply
affixing a government seal of approval, government could silence or muffle the
expression of disfavored viewpoints." *Matal v. Tam*, 582 U.S. 218, 235 (2017).
"Because characterizing speech as government speech strips it of all First
Amendment protection under the Free Speech Clause, we do not do so lightly."
*Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*, 806 F.3d 1070, 1074 (11th Cir. 2015)
(internal citation and quotation marks omitted).

In *Shurtleff v. City of Boston*, the Supreme Court recently outlined a "holistic
inquiry" for courts to determine if the government intends to speak, which is guided
by consideration of the following factors: (1) "the history of the expression at issue";
(2) "the public's likely perception as to who (the government or a private person) is
speaking"; and (3) "the extent to which the government has actively shaped or
controlled the expression." 596 U.S. 243, 252 (2022). The Eleventh Circuit has

considered a corresponding list of factors: history, endorsement, and control. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1230 (11th Cir. 2019).

Although the Eleventh Circuit has yet to address the issue before the Court, its sister circuit has in *GLBT Youth in Iowa School Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024). There, the Eighth Circuit applied the Supreme Court's approach in *Shurtleff* to reject arguments that removing books from public school libraries was government speech, *id.*, distinguishing the case upon which State Defendants rely: *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009). In *Summum*, the Court held that "the placement of a permanent monument in a public park is best viewed as a form of government speech." *Id.* at 464. But the Eighth Circuit found "reliance on that case unavailing as public school libraries do not share the characteristics of monuments in a park." *Reynolds*, 114 F.4th at 667.

Furthermore, "[f]acilitating speech by private persons cannot constitute government speech unless the government assigns a power to speak to those persons or appropriates the products of their expressive activity to express its own message." *Shurtleff*, 596 U.S. at 271 (Alito, J. concurring). And "[f]or the adopted expression to qualify as the government's, the private party must alienate control over the medium of expression to the government. And government actors must put the medium to use to intentionally express a government message. Otherwise, the

government is simply providing a forum for private parties to submit their own
productions and usual First Amendment principles apply." *Id.* at 270–71 (internal
citations omitted).

In the past, however, the D.C. Circuit has indicated that "[w]ith respect to the
public library, the government speaks through its selection of which books to put on
the shelves and which books to exclude." *People for the Ethical Treatment of
Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005); *see also Bryant v. Gates*,
532 F.3d 888, 898 (D.C. Cir. 2008) (Kavanaugh, J. concurring) ("As the case law
makes clear, 'government speech' can include not only the words of government
officials but also 'compilation of the speech of third parties' by government entities
such as libraries, broadcasters, newspapers, museums, schools, and the like." (citing
*Gittens*, 414 F.3d at 28)). State Defendants argue this Court should follow the D.C.
Circuit's approach because there is no distinction between removing and collecting
books. (Doc. 100 at 3). After having just relied on the dissenting arguments in *Board
of Education v. Pico*, 457 U.S. 853 (1982), for that proposition—in the same
breath—State Defendants take issue with Plaintiffs' citations to *Pico*, noting that the
Eleventh Circuit has stated the decision has no precedential value. (*Id.* at 3–4). State
Defendants cannot have their cake and eat it too.

While the more recent persuasive authority favors Plaintiffs, "the factors that
the Eleventh Circuit has used to determine whether something is government

speech—e.g., history, endorsement, control—are fact-intensive and generally not amenable to resolution at the motion to dismiss stage." *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) (internal citation omitted). And given the similarity to the *Shurtleff* inquiry, to make the finding State Defendants seek, the Court must be provided a "robust enough record to determine whether [the collection of books selected for a school library] constitutes government speech." *Gundy v. City of Jacksonville*, 50 F.4th 60, 77 (11th Cir. 2022). At this stage, the Court cannot find that the selection or removal of books in a public school library is government speech.

### 2.    Government Subsidy

Next, State Defendants argue that removing books from a public school library does not violate the First Amendment because the State is only withdrawing a benefit that facilitates First Amendment rights. (Doc. 85-1 at 21). State Defendants are correct that "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 549 (1983). However, the case law cited by State Defendants is inapposite.

In *Ysursa v. Pocatello Education Association*, the Court rejected a First Amendment challenge to a state law that banned payroll deductions for union political activities. 555 U.S. 353, 355 (2009). The Court explained that although

"publicly administered payroll deductions for political purposes can enhance the
unions' exercise of First Amendment rights . . . the State's decision not to do so is
not an abridgment of the unions' speech; they are free to engage in such speech as
they see fit. They simply are barred from enlisting the State in support of that
endeavor." *Id.* at 359. Likewise, State Defendants argue that because students may
access the removed books and the authors and publishers may provide students those
books through other avenues, the restriction does not infringe upon their First
Amendment rights. That is incorrect.

First, the statute does not evenhandedly withdraw access to public school
libraries or particular books throughout the state as did the law in *Ysursa* by
prohibiting payroll deductions for union political activity. *See Zykan v. Warsaw
Community School Corp.*, 631 F.2d 1300, 1308 (7th Cir. 1980) (explaining an
administrator may not "remove a book from the library as part of a purge of all
material offensive to a single, exclusive perception of the way of the world, any more
than he or she may originally stock the library on this basis"). Second, speech is
being restricted here, not funding.[2] The availability of the removed books from other
sources does not alleviate this fact.

---

[2] State Defendants also cite to *Rust v. Sullivan*, 500 U.S. 173 (1991). However, that case
was entirely about funding. *Id.* at 193 ("The Government can, without violating the Constitution,
selectively fund a program to encourage certain activities it believes to be in the public interest,
without at the same time funding an alternative program which seeks to deal with the problem in
another way.").

"Restraint on expression may not generally be justified by the fact that there

may be other times, places, or circumstances available for such expression."

*Minarcini*, 541 F.2d at 582. The Sixth Circuit elaborated in regard to school library

books as follows:

> If one of the English teachers considered Joseph Heller's
> *Catch 22* to be one of the more important modern
> American novels (as, indeed, at least one did), we assume
> that no one would dispute that the First Amendment's
> protection of academic freedom would protect both his
> right to say so in class and his students' right to hear him
> and to find and read the book. Obviously, the students'
> success in this last endeavor would be greatly hindered by
> the fact that the book sought had been removed from the
> school library. The removal of books from a school library
> is a much more serious burden upon freedom of classroom
> discussion than the action found unconstitutional in *Tinker
> v. Des Moines Independent Community School District*.[3]

*Id.* (citation omitted).

State Defendants also argue that Plaintiffs fail to acknowledge that "[t]o fulfill

their traditional missions, public libraries must have broad discretion to decide what

material to provide to their patrons." *United States v. Am. Libr. Ass'n*, 539 U.S. 194,

204 (2003). However, it is State Defendants that fail to grapple with the fact that

discretion is what this statute removes. What the Court is faced with today is a

regime built around not a librarian's sound judgment but rather any parent's

---

[3] In that case, the Supreme Court found students' wearing of black armbands in protest of
the Vietnam War was protected speech under the First Amendment where "[t]hey neither
interrupted school activities nor sought to intrude in the school affairs or the lives of others." 393
U.S. 503, 514 (1969).

objection, however capricious. What Plaintiffs appear to allege is that school librarians have been stripped of their broad discretion because they must remove objected to books that do not contain obscene material and may not undertake a "holistic evaluation or consideration of their literary, artistic, political, or scientific value." (Doc. 1 at 32, 35–36). Therefore, the Court finds State Defendants' government subsidy argument unpersuasive.

### 3.    *Standard of Review*

Finally, State Defendants argue that even if the First Amendment applied here, Plaintiffs would only be able to receive rational basis review under *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), and their arguments fail under that standard. (Doc. 85-1 at 23). In *Hazelwood*, the Court held "that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273. Plaintiffs argue that such argument is premature and incorrect. (Doc. 94 at 16).

In *ACLU of Florida v. Miami-Dade County School Board*, where the plaintiffs challenged the removal of single book from a school library, 557 F.3d at 1182–83, the court explained that "[t]he argument against applying the *Hazelwood* standard here is that this is not a school newspaper situation, and the speech at issue does not

form part of a course of study in a school's curriculum. This is a school library book

case." *ACLU of Fla.*, 557 F.3d at 1202. As is the case here.

While the court left the issue unresolved there, the Eleventh Circuit previously

interpreted the *Hazelwood* decision as "an application of [the *Cornelius*] standard to

a curricular program." *Searcey v. Harris*, 888 F.2d 1314, 1319 (11th Cir. 1989). In

*Cornelius v. NAACP Legal Defense Fund*, the Supreme Court explained that in a

nonpublic forum, First Amendment restrictions may "be based on subject matter and

speaker identity so long as the distinctions are reasonable in light of the purposes

served by the forum and are viewpoint neutral." 473 U.S. 788, 806 (1985). And

while the Eleventh Circuit has applied *Hazelwood* to uphold the removal of optional

readings that contained "explicit sexuality and excessively vulgar language" from

an elective course, that was because the books were specifically related to the

curriculum. *Virgil v. Sch. Bd. of Columbia Cnty., Fla.*, 862 F.2d 1517, 1521–23 (11th

Cir. 1989). Important to *Virgil*'s holding, the court "note[d] that the disputed

materials have not been banned from the school. The *Humanities* textbook and other

adaptations of *Lysistrata* and *The Miller's Tale* are available in the school library."

*Id.* at 1525. So, it is not a foregone conclusion that Plaintiffs lose under *Hazelwood*

as State Defendants contend. Nevertheless, at this stage, the Court will not decide

whether the standard applies in this case. Therefore, State Defendants' Motion will

be denied.

### IV.   Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** that State Defendants' Motion to Dismiss (Doc. 85-1) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on February 28, 2025.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record